```
UNITED STATES DISTRICT COURT                                    C/M
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
RADCLIFFE MEEKS,                             :
                                             :    MEMORANDUM
                    Petitioner,              :    DECISION AND ORDER
                                             :
         - against -                         :    10 Civ. 4021 (BMC)
                                             :
DALE ARTUS, Superintendent, Clinton          :
Correctional Facility,                       :
                                             :
                    Respondent.              :
                                             :
-------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner brings this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254(d). The facts of the case are simply stated. When police responded to a call that petitioner was walking through a neighborhood and had threatened to kill a man who was walking into his own house, petitioner attacked and put one of the responding police officers into a chokehold. Then, while staring at the officer's partner, petitioner slowly dragged a carpet knife across the officer's throat, cutting so deeply that he exposed neck muscles on a path that came within one-fourth of an inch of the officer's jugular vein and carotid artery. The victim's partner shot petitioner in the shoulder, forcing him to drop the knife, and petitioner was then arrested. In 2006, petitioner was convicted of Attempted Murder in the First Degree, Criminal Possession of a Weapon in the Fourth Degree, and Menacing in the Third Degree. He was sentenced to concurrent terms totaling twenty-five years to life.

Petitioner raises three points of error: (1) the trial court improperly (a) permitted cross-examination of petitioner on the facts underlying certain prior convictions, and (b) allowed into evidence three photographs of the officer's injuries; (2) the prosecutor's summation was

improper; and (3) appellate counsel was ineffective for not raising on appeal (a) a Batson claim; and (b) the failure of the prosecutor to provide petitioner with notice that the victim would be speaking at his sentencing.

Additional facts will be set forth below as necessary to consider each of petitioner's points of error. None of those points have merit and the petition is accordingly denied.

## I. Evidentiary Errors

Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was "'so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (quoting Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668 (1990)). A habeas petitioner asserting evidentiary error "'bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude.'" Sierra v. Burge, No. 06 Civ. 14432, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007) (quoting Copes v. Shriver, No. 97 Civ. 2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997)).

### A. **The three photographs**

One of the photos showed the stricken officer in the hospital room with a number of tubes on his face and neck. The second photo showed him laying on a gurney with a deep gash across the left side of his neck. The third photo showed the officer's bloodied finger.

Petitioner only objected to the second photograph at trial. The Appellate Division, in rejecting his claim, held that this objection was "partially unpreserved for appellate review, as the defendant did not object to the admission of the first and third photographs." People v.

2

Meeks, 56 A.D.3d 800, 801, 868 N.Y.S.2d 287 (2d Dep't 2008). Because "[i]t is now axiomatic that [in] 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred,'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991)), this Court may not review the ruling to admit the first and third photographs. See, e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) (recognizing New York's "contemporaneous objection" rule as an adequate and independent state ground barring habeas review). Petitioner has not attempted to, and on this record cannot, demonstrate either cause for his failure to object and that he will be prejudiced by the absence of review, or that a miscarriage of justice will result if the claim is not reviewed. See Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038 (1989).

As to the one photograph to which objection was made, depicting the neck wound, the Appellate Division held that it was "properly admitted to illustrate the testimony of the victim's treating physician and to aid in establishing the defendant's intent." Meeks, 56 A.D.3d at 801. This affirmance of an evidentiary ruling can only be set aside if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

Significantly, nowhere in his brief point on this issue in the Appellate Division did petitioner cite a single Supreme Court or federal case or even refer to any part of the U.S. Constitution, and he cites none here, stating only that the photographs collectively "compromised" his "fundamental right to a fair trial." His counsel at trial similarly argued only that the photograph was "highly prejudicial, inflammatory and not necessary to prove any of the charges." Although this is may or may not have been sufficient to have exhausted a federal due

3

process claim, see Duncan v. Henry, 513 U.S. 364, 115 S. Ct. 887 (1995) (per curiam) (suggesting that objection to evidence as "so inflammatory as to prevent a fair trial" may be sufficient to assert federal claim), I will assume that the claim was exhausted. Nevertheless, petitioner's presentation of the claim shows the absence of any Supreme Court authority to or of which the Appellate Division's decision could be "contrary" or "an unreasonable application."

This was merely a discretionary evidentiary ruling as to which the trial court determined that the probative value of the photo – it was the only way the jury could see the extent of the injury aside from oral description – outweighed its prejudicial impact. There was a reason to exercise discretion in that manner: petitioner testified that he used the knife only in self-defense and that he never intended to harm or kill the officer. The severity of the wound as depicted in the photograph was one factor the jury could consider in determining petitioner's intent and the credibility of the police officer's testimony that petitioner had slowly and deeply drawn the knife across the officer's throat. (Petitioner also testified, contrary to the police officers, that they were in an unmarked car in plain clothes.) In addition, the trial court gave an ameliorative instruction that the photographs were only to assist them "in any factual determination" and were not shown "to inflame passions or to raise emotions." Under these circumstances, petitioner has failed to show that the state courts acted contrary to or made an unreasonable application of any Supreme Court authority.

## B. The Sandoval Ruling

Prior to the attack on the police officer at issue in this case, petitioner had committed other violent crimes and acts. Five years prior to the attack in this case, he was convicted of charges arising from threatening a victim and a police officer with a knife, injuring the police officer, and resisting arrest. Three years earlier, petitioner had been convicted of resisting arrest

4

when he verbally accosted a police officer who was trying to execute an outstanding warrant on him. In addition, petitioner had beaten a fellow inmate while he was incarcerated on another case, and several months before the instant offense, he had threatened to kill people in his neighborhood with a knife, although he was not convicted of any charges arising out of these incidents.

The trial court held a pretrial *in limine* hearing, known in New York as a <u>Sandoval</u> hearing, to determine the extent, if any, to which the prosecutor could impeach petitioner with these prior convictions and acts if he testified. It ruled that the prosecutor could ask only whether petitioner had been convicted of two crimes for which he was imprisoned for one year concurrently, without going into the details of those crimes – unless petitioner opened the door by testifying to facts inconsistent with his past convictions.

During his direct examination, trial counsel asked petitioner if he had ever threatened to hurt or kill Watt, the victim whose emergency call had led to the confrontation with the police. Instead of just answering the question, petitioner replied that "I have never threatened anyone, I would not have a reason to do that." When asked later if he intended to kill any police officer on the night in question, petitioner answered, "I never intended to kill anyone in my life. It is the first time any such events have ever taken place . . . ." The Court granted the prosecutor's motion to allow cross-examination as to the facts of his two prior convictions only, finding that the door had been opened. The prosecutor then attempted to get petitioner to admit that he had engaged in the prior criminal behavior leading to his convictions, which petitioner repeatedly denied, and the trial court told the prosecutor to move on.

This issue, even more clearly than that relating to the photographs discussed above, does not relate to a preserved and exhausted federal constitutional claim. Petitioner's brief point in

5

the Appellate Division referred only to deprivation of a "fundamental right to a fair trial," but, again, never mentioned the Constitution, the Due Process clause, or any federal authority. Equally significant was that the three state cases cited in the brief were pure "evidence" cases, where the courts had simply weighed the probative value of the prior crimes against their prejudicial impact. There is nothing that even hints of a federal constitutional claim with regard to this issue. Because there is no longer an avenue by which petitioner could pursue a constitutional claim relating to this issue in state court, it is deemed exhausted but procedurally barred. See Jackson v. Lee, No. 10 civ. 3062, 2010 WL 4628013, at *22 (S.D.N.Y. Nov. 16, 2010) (holding that Sandoval claim raised entirely in state law terms is deemed exhausted but procedurally barred because "[w]hen addressing his Sandoval claim . . . appellate counsel merely relied on two state cases and never mentioned any federal constitutional issues").

However, even if I were to deem this claim to be an exhausted due process claim, I would reject it. The Appellate Division disposed of it on the merits, holding that petitioner "opened the door to such questioning by testifying to facts which conflicted with the previously-precluded evidence." Meeks, 56 A.D.3d at 801. This holding is neither contrary to nor an unreasonable application of Supreme Court authority. See generally Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000). The ruling reflects, again, merely the exercise of discretion in a manner that does not impact the fundamental fairness of petitioner's trial in any way.

## II. The Prosecutor's Summation

Petitioner contends that the prosecutor improperly called him a liar in her closing argument and said that the police officers, not petitioner, were telling the truth. The Appellate Division held that "defendant failed to preserve for appellate review his challenges to the prosecutor's summation" and that "[i]n any event, the challenged remarks were responsive to

6

defense counsel's summation, constituted fair comment on the evidence, or were harmless error." Meeks 56 A.D.3d at 801.

As was the case with the first and third photographs, the Appellate Division's reliance on an independent and adequate state court ground precludes review in this Court. See Dunham, 313 F.3d at 729. Petitioner has made no attempt to demonstrate cause and prejudice, or actual innocence, and I can find none on this record. This point of error is therefore rejected.

### III. Ineffective Assistance of Appellate Counsel

Denying petitioner's application for a writ of error *coram nobis*, the Appellate Division held that he "had failed to establish that he was denied the effective assistance of appellate counsel." People v. Meeks, 72 A.D.3d 847, 847, 898 N.Y.S.2d 489 (2d Dep't 2010). This is a denial on the merits which requires this Court's review under the same deferential standard noted above, i.e., that the decision is contrary to or an unreasonable application of Supreme Court authority. The Supreme Court authority at issue is Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). To establish a claim of ineffective assistance of counsel, the petitioner must demonstrate: (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052 (1984). In applying this standard, judicial scrutiny of counsel's actions must be highly deferential. Id. at 689.

Although the Strickland test was formulated in the context of an ineffective assistance of trial counsel claim, it also applies to claims of ineffective appellate counsel. Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992). A state habeas petitioner claiming ineffective assistance of appellate counsel must show that the state court "applied Strickland to the facts of his case in an

7

objectively unreasonable manner," Bell v. Cone, 535 U.S. 685, 698-99, 122 S. Ct. 1843 (2002), and that but for his attorney's errors petitioner's claim would have been successful in the state's highest court. Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994). In analyzing the effectiveness of appellate counsel, the Supreme Court stated in Jones v. Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308 (1983), that the reviewing court must be mindful that there is no obligation on the part of appellate counsel to "raise every 'colorable' claim suggested by a client." Furthermore, in examining a claim of ineffectiveness of appellate counsel, judges "are not 'to second-guess reasonable professional judgments' by appellate attorneys as to what are the most promising issues for appellate review." Tsirizotakis v. LeFevre, 736 F.2d 57 (2d Cir. 1984) (quoting Jones v. Barnes, 463 U.S. at 754).

There was good reason why appellate counsel did not pursue petitioner's claim under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), on appeal: the claim was unpreserved for appellate review. After the prosecutor exercised peremptory challenges against two black female panel members in the first round of selection, his trial counsel objected on Batson grounds. The trial court held that two peremptory challenges were insufficient to make a *prima facie* case. After the third objection to a black female jury member, the trial court indicated that there was still not enough to require a race neutral explanation, but acknowledged that a pattern was emerging. When the prosecutor challenged the fourth black female panel member, the Court found that defense counsel had established a *prima facie* case for race-based challenges and required an explanation. This panel member had a brother who had been arrested for aggravated assault; the adequacy of that as a race-neutral reason was obvious and the Court overruled the objection. However, when the prosecutor challenged another black member on the grounds that

8

she read the Bible and would be too forgiving, the trial court sustained the Batson challenge and seated the juror.

It might be arguable that the trial court should have made an inquiry as to the first three challenged black female jurors after finding that defense counsel had made a *prima facie* case for race-based challenges, or that the trial court should have inquired into the first three challenges after finding no race neutral justification for the fifth challenge. But trial counsel never asked the trial judge to look back at the first three jurors. After succeeding in his objection to the fifth preemptory challenge, trial counsel appeared content with the panel's composition. Without a request to look back, the issue was likely not preserved. See Garraway v. Phillips, 591 F.3d 72, 76 (2d Cir. 2010) ("[B]y failing to advise the prosecutor or the court that explanations were offered as to fewer than all of several challenged strikes, the defendant has forfeited his Batson claim.") Thus, the Appellate Division reasonably applied Strickland, as appellate counsel's decision not to press the point was objectively reasonable in light of the preservation defect.

Even if petitioner had established the unreasonableness of appellate counsel's failure to raise the Batson issue, he has not even argued that there is a reasonable probability the outcome would have been different but for such error. The record does not indicate that the racial composition of the jury was inappropriate or biased or that any imbalance, if it existed, might have affected the verdict. See, e.g. Morales v. Greiner, 273 F. Supp. 2d 236, 253 (E.D.N.Y. 2003) ("Because the unasserted Batson claim does not implicate any rights of the petitioner, it is difficult to see how the failure of petitioner's attorney to assert it constitutes 'prejudice' as defined in Strickland. The issue bears no relation to the defendant's guilt or innocence and as such cannot undermine confidence in the verdict; nor does it raise any concern over the adversarial testing of the government's case.").

Finally, petitioner contends that he did not receive notice that a victim impact statement would be made at his sentencing, as required by N.Y. C.P.L. § 380.52(b), and that his appellate counsel was ineffective for failing to raise this on appeal. However, appellate counsel had good reason for not pressing this point: the statute requires that if notice is not given, then trial counsel must move for an adjournment, and if one is not sought, the right to notice is waived. See People v. Copeland, 281 A.D.2d 985, 721 N.Y.S.2d 896 (4th Dep't 2001). In addition, even if he prevailed, petitioner would only receive a resentencing, not, as he demanded in his *coram nobis* petition, a retrial. The Appellate Division, therefore, reasonably applied Strickland in determining that the decision of appellate counsel was not objectively unreasonable.

## CONCLUSION

The petition is denied and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
February 17, 2011